**DAVID P. COOPER, OSB No. 880367**
cooper@khpatent.com
**OWEN W. DUKELOW, OSB No. 965318**
owen@khpatent.com
**KOLISCH HARTWELL, P.C.**
520 SW Yamhill St., Suite 300
Portland Oregon 97204
Telephone: (503) 224-6655

**ADAM L. BROOKMAN, PRO HAC VICE MOTION TO BE FILED**
abrookman@boylefred.com
**BOYLE FREDRICKSON, S.C.**
840 N. Plankinton Ave.
Milwaukee, WI 53203
Telephone: (414) 225-9755

Attorneys for Flying Blue Imports, LLC

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **WILLAMETTE VALLEY VINEYARDS, INC.** | Case No. 3:21 cv-00514 JR |
| Plaintiff, | FLYING BLUE IMPORT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE AND MEMORANDUM IN SUPPORT |
| **FLYING BLUE IMPORTS, LLC DBA FLYING BLUE AKA WILLAMETTE VALLEY CELLARS,** | |
| Defendant. | Request for Oral Argument |

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, counsel for Defendant certifies that they have conferred in good faith with counsel for Plaintiff in an attempt to resolve the issues presented by this motion. Prior to the original May 3 deadline for Defendant's response to the complaint, Counsel for Plaintiff agreed to allow Defendant a one-week extension for responding to the complaint.

Defendant's counsel notified Plaintiff's counsel that Defendant would file a motion to dismiss for lack of personal jurisdiction and improper venue, and Plaintiff's counsel informed Defendant's counsel that Plaintiff would oppose that motion.

## MOTION

Defendant Flying Blue Imports, LLC, ("Flying Blue") hereby timely moves the Court to dismiss the present action for lack of jurisdiction and improper venue. Flying Blue's original deadline for response to the complaint was May 3 but, as noted above, Plaintiff's counsel agree to a one-week extension to today, May 10, 2021. The basis for this motion is simple: Plaintiff, Willamette Valley Vineyards, Inc. ("WVV"), filed its complaint here, in the District of Oregon ("the District"), even though Flying Blue has no presence in the District and none of the events or omissions allegedly giving rise to its claim against Flying Blue occurred here. This action should therefore be dismissed.

The motion is supported by the following Memorandum in Support of Flying Blue's Motion to Dismiss for Lack of Jurisdiction and Improper Venue and the accompanying Declaration of Roger Scommegna.

## MEMORANDUM IN SUPPORT OF MOTION

### I. THE FACTS

Flying Blue is a Wisconsin limited liability company with its sole place of business in Wisconsin. Declaration of Roger Scommegna in Support of Flying Blue Imports Motion to Dismiss at ¶2 ("Scommegna Dec"). Flying Blue owns no real estate, maintains no bank accounts, has no telephone listings, has no retail outlets, does not operate any distribution centers, order centers, or manufacturing plants and does not maintain any employees, agents or sales representatives within Oregon. Scommegna Dec. at ¶4. Moreover, it would be extremely

inconvenient, inordinately time consuming, and needlessly expensive, if Flying Blue were required to litigate this action in Oregon.  Scommegna Dec. at ¶5.

### A. Background

Flying Blue Imports was founded by Roger Scommegna and Stephanie Riven. Scommegna Dec. at ¶6.  Mr. Scommegna is a long-time wine entrepreneur who is one of the original owners of the Three Thieves label and the current owner of Signal Ridge Vineyards. Ms. Riven was the winemaker for Signal Ridge.  *Id.*  When she decided to move to Bordeaux, France in 2016, she and Mr. Scommegna wanted to continue in business together and founded Flying Blue Imports to import hidden gems to be sold under private or exclusive labels through distributors to grocery stores (e.g., Albertsons and Winn Dixie) and big box retailers (e.g., Costco and Target).  *Id.*  Over the last five years, the business has expanded to include the purchase, bottling, and labeling of wine in the United States that various sellers could not use. Scommegna Dec. at ¶7.  This has resulted in the annual creation of upwards of 100 different labels under which the wine is sold.  *Id.*  Some of the labels, such as "French Blue" are very successful and become year over year mainstays of Flying Blue.  *Id.*  More recently, Flying Blue has created and sold wine "advent calendars" that have become its largest selling product line. Each "calendar" has multiple bottles of wine each with its own label.  *Id.*

**East Coast Distribution; Very Small Amout of Product; and Very Different Label.** In 2020, Wegmans Food Market, a relatively small grocery chain on the east coast with locations in seven states (Maryland, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania, and Virginia), expressed an interest in an exclusive wine label to sell across its stores. Scommegna Dec. at ¶8.  To address this interest, Flying Blue sourced 1740 cases of pinot noir "shiners" (filled bottles of wine without labels) from a winery in the Willamette Valley.  *Id.*

Flying Blue created labels which named this wine "Willamette Valley Cellars Pinot Noir Reserve" to describe the location from which the wine came and to echo the notion of wine cellars in the same manner as many others do for wines from other regions (e.g., "Napa Cellars" (https://www.napacellars.com/) and "Bennet Valley Cellars" (https://www.bennettvalleycellars.com/)). *Id.* The label that Flying Blue designed is a distinctive dark blue with white lettering and a large white puffy cloud. *Id.*



This label bears no resemblance to the labels used by WVV, an example of which is set forth below:



*Id.*

**Details of Communications Between the Parties.** After the wine's introduction at Wegmans, in July 2020, WVV contacted Mr. Scommegna and demanded that Flying Blue voluntarily abandon its trademark application for the "Willamette Valley Cellars" mark; voluntarily surrender the Certificate of Label Approval ("COLA") for the "Willamette Valley Cellars" label; permanently disabled the <willamettevalleycellars.com> domain so that it did not forward or resolve to any website (which was not even active at that time); remove the "Willamette Valley Cellars" page from the Flying Blue Imports website; delete all references to "Willamette Valley Cellars" from Flying Blue's Facebook, Twitter, Instagram and other social media pages; agree not to use the "Willamette Valley Cellars" name going forward; and provide a date certain for the cessation of sales of the wine. Scommegna Dec. at ¶9.

Ultimately, in response to WVV's demands, Flying Blue indicated to WVV that the wine was a limited run and would be closed out, estimating that Wegmans (an independent third party over whom Flying Blue has no control) would sell out of the wine in issue by approximately March 1, 2021. Scommegna Dec. at ¶10. Flying Blue agreed not to use the name again and expressly abandoned its trademark application. Still further, prior to the filing of the lawsuit, Flying Blue deleted the references to "Willamette Valley Cellars" on its social media pages and agreed to take down its web page devoted to the wine and to withdraw the COLA within 30 days of Wegmans' sell out of the wine.[1] Scommegna Dec. at ¶11.

Shortly after March 1, 2021, in response to renewed demands by WVV for Flying Blue to force Wegmans to cease all sales, Mr. Scommegna reiterated to WVV that no further product had been or would be labeled or shipped. Despite Flying Blue's assurances of no further use of the name and other elements of compliance with WVV's demands, WVV insisted that Flying

---

[1] A COLA must remain on file with U.S. Department of the Treasury's Alcohol and Tobacco Tax and Trade Bureau while a wine is being sold in the United States.

5

Blue cause Wegmans to immediately cease all sales of the wine or face an immediate lawsuit. *Id.* Mr. Scommegna, frustrated by WVV's demands to do something beyond his control (stop Wegmans, an independent third party from selling wine it had purchased in an arm's length commercial transaction) and in the face of his prior efforts to comply with WVV's wishes, sarcastically told WVV to sue Flying Blue if his efforts were not enough. Scommegna Dec. at ¶13.

Despite the relatively minuscule amount of product originally in issue and the even tinier amount remaining in Wegmans' inventory (less than 200 cases), and in the face of Flying Blue's assurances and steps to comply with WVV's demands, WVV filed the instant lawsuit. Scommegna Dec. at ¶14. Given that there is no basis for any monetary damages in this case – there has been no actual confusion and no willful conduct on the part of Flying Blue – the most WVV can hope to get out of this lawsuit is exactly what it will get when Wegmans finishes its selloff of the remaining cases of wine, which will occur before discovery even opens in this case.

This same disregard for practical reality runs through WVV's selection of Oregon as the jurisdiction and venue for its claims. As noted above, Wegmans has stores in only seven states, all on the East Coast. Scommegna Dec. at ¶15. Still further, Wegmans does not ship any products outside its trading area. *Id.* Indeed, as a review of Wegmans' web site confirms, products in store inventory are available only for in store purchase, curbside pickup following an online order, and delivery within a narrow area surrounding each store. *Id.* at Ex. A, thereto.

**In other words, the product in question, Willamette Valley Cellars Pinot Noir Reserve, has been sold only in a limited geographic area far from Oregon**. Scommegna Dec. at ¶15[Emphasis added]. No one in Oregon can purchase the product, nor has any potential customer in Oregon been exposed to it. *Id.* While Flying Blue does ship some of its product to

6

distributors in Oregon for resale to unaffiliated retail entities, Flying Blue has not made a single sale into Oregon of the product that is accused of infringing WVV's asserted trademark rights. *Id.*

**Details of How Product Was Purchased, Shipped, Labeled, and Sold.** While purchased from an Oregon vineyard, the product in question was already bottled when it was acquired. Scommegna Dec. at ¶16. The bottled wine was purchased via an ordinary commercial transaction, via telephone and email from outside the state of Oregon, without a contract being signed. *Id.* The label was designed in Wisconsin at Flying Blue's only location, in Brookfield, Wisconsin. Scommegna Dec. at ¶17. While it was printed and affixed to bottles in Oregon by a third party, no customers or potential customers ever saw it in Oregon. *Id.* Instead, after the labels were affixed, the bottles were packed into cases and shipped out of Oregon by Wegmans' distributor, Milton's Distributing Co. ("Milton's"). *Id.* They remained with Milton's until distributed to Wegmans stores for sale. *Id.* Only then were the labels made visible to the public through Wegmans' web site, Flying Blue's web page devoted to the product and in Wegmans' stores. *Id.* At all times, however, the consuming public was limited to persons in the seven states where Wegmans stores are located. Scommegna Dec. at ¶18.

More generally, as noted above, Flying Blue does ship product to unaffiliated distributors in Oregon in connection with other products. Scommegna Dec. at ¶19. It also has, on less than 10 occasions over the last five years, purchased excess inventory of wine from several Oregon vineyards. *Id.* However, as with the transaction involving the current wine in dispute, the transactions were conducted remotely, from outside Oregon, without a contract and no one representing Flying Blue has traveled to Oregon in the last five years. *Id.*

7

## II. THE LAW

### A. Personal Jurisdiction

The burden of proving personal jurisdiction is on the plaintiff. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir.2011) *(citing Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir.2008)). For personal jurisdiction to lie in Oregon, it must comport with the Oregon's long arm statute and with the federal constitutional guarantee of due process. *Cumber v. Cumber*, No. CV-10-363-ST, 2010 WL 3952877, at *2 (D. Or. July 15, 2010), *report and recommendation adopted,* No. 10-CV-363-ST, 2010 WL 3909517 (D. Or. Oct. 4, 2010)

#### 1. Oregon's Long-arm Statute

The Oregon long-arm statute is co-extensive with constitutional standards. *Capsugel Belgium NV v. Bright Pharma Caps, Inc.*, No. 3:15-CV-321-PK, 2015 WL 7185463, at *2 (D. Or. Nov. 13, 2015) (citing Or. R. Civ. P. 4(L)). Thus, this Court need only to determine whether its exercise of personal jurisdiction over Flying Blue would offend constitutional due process requirements. *See Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir.2008); *see also Hydraulic Servocontrols Corp. v. Dale,* 294 Or. 381, 384, 657 P.2d 211 (1982).

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). As such, the single inquiry which must be undertaken by this Court is whether jurisdiction over Flying Blue comports with due process. It does not, as discussed below.

### *2. Due Process Requirements*

In order to show that due process has been met, a defendant must have "minimum contacts" with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). There are two types of jurisdiction that implicate the minimum contacts requirement; general jurisdiction and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To establish specific jurisdiction over a defendant, the plaintiff must demonstrate that "the defendant has `purposefully directed' his activities at residents of the forum," *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984), and that the controversy is related to or arises out of a defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414 (1984). The plaintiff must also demonstrate that the defendant's activities must be purposefully directed at the forum state "in more than a random, fortuitous, or attenuated way." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985.)

The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154.; *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Instead, it is the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to ensure." *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154. "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir.2008). A court has general personal jurisdiction over a defendant whose contacts with the forum are "so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear v. Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 131 S.Ct.

2846, 2851, 180 L.Ed.2d 796 (2011)). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King,* 471 U.S. at 472–74, 105 S.Ct. 2174.

### 3. *Specific Jurisdiction*

The Ninth Circuit, whose law governs this analysis, employs a three-prong test to determine whether specific jurisdiction exists, asking whether (1) the defendant purposefully directed its activities toward the forum or purposefully availed itself of the privileges of conducting activities in the forum; (2) the claim is one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e. whether it is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

With respect to the first prong of the test – whether the non-resident defendant purposefully directed its activities to the forum, the Ninth Circuit uses a three-part test (the "effects test") from the Supreme Court's opinion *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), to evaluate purposeful direction in trademark claims. *Panavision Int'l v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998). "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Axiom Foods* 874 F.3d at 1068 quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

With respect to the second prong of the test – whether the plaintiff's claim arises out of the nonresident defendant's forum-related activities – the Ninth Circuit had previously held that "individualized targeting" satisfies the express aiming requirement. *See Brayton Purcell LLP v.*

*Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir. 2010).  A theory of individualized targeting alleges that a defendant engaged in wrongful conduct targeted at a plaintiff whom the defendant knew to be a resident of the forum state.  *Id.*  In the context of copyright infringement, the Court in *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678-679 (9th Cir. 2012*)*, held that a defendant's "alleged willful infringement of [a plaintiff's] copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder," established "individualized targeting.".

However, in *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014), the Supreme Court rejected the Ninth Circuit's conclusion that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the "foreseeable harm" the plaintiffs suffered in the forum, comprised sufficient minimum contacts.  Instead, courts must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum. *Id.* at 1124–25.  This overruled *Washington Shoe.  Axiom Foods, Inc.* 874 F.3d at 1069–70.  As such, while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires.  *Id.*

With respect to the third prong of the specific personal jurisdiction test, the burden shifts to the defendant to rebut the presumption that the exercise of specific personal jurisdiction would be reasonable.  *Control Sols., Inc. v. MicroDAQ.com, Inc.*, 126 F. Supp. 3d 1182, 1189–91 (D. Or. 2015).  In determining reasonableness, the Ninth Circuit examines seven factors: the extent of purposeful interjection; the burden on the defendant to defend the suit in the chosen forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the

11

chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 386 (9th Cir.1990). A court must balance these seven factors to determine whether the exercise of jurisdiction would be reasonable." *Id.*

### 4. General Jurisdiction

To establish general jurisdiction, plaintiff bears an even higher burden. A corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Int'l Shoe*, 326 U.S., at 318, 66 S.Ct. 154. Indeed, only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction there. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear* 564 U.S., 131 S.Ct., at 2853–2854). "[A] plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required" and those contacts must be "constant and pervasive." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). It is "only in an exceptional case" where general jurisdiction will be found outside of a corporation's place of incorporation and its principal place of business. *Id.*

### B. Venue

When venue is challenged, the Plaintiff has the burden of establishing proper venue because "the purpose of statutorily defined venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-84 (1979) (emphasis in original); *see also Piedmont Label Co. v. Sun*

*Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir.1979). The requirement that a court have proper venue to hear a case is specific and unambiguous and should not be given liberal construction. *Leroy* 443 U.S. at 185 n.18. Where no statutory basis for venue exists, the court must either dismiss the case, or transfer it to a proper forum. 28 U.S.C. § 1406(a).

In trademark infringement cases, the focus of the venue inquiry is the location where the alleged unauthorized passing off takes place. *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) "The district in which the infringed trademark was originally prepared or initiated is not determinative." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295–96 (3d Cir. 1994).; *see als*o *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639, (2d Cir. 1956); 6 *McCarthy on Trademarks and Unfair Competition* § 32:38.40 (5th ed.)("Consistent with the precedent of *Vanity Fair Mills*, the majority of courts have held that a claim of trademark infringement takes place where the allegedly infringing sales occur, not where the injury is felt."). Thus, for purposes of the present action, venue exists either where Flying Blue resides (the Eastern District of Wisconsin) or where the alleged infringing sales occurred (the seven states in which Wegmans sells the wine in issue).

### III.   ARGUMENT

#### A.  There is no General Jurisdiction Over Flying Blue

As noted above, to find general jurisdiction over Flying Blue, WVV must show that Flying Blue's contacts with Oregon are continuous, systematic, and fairly extensive. Indeed, WVV bears the burden of establishing that Oregon is equivalent to the place Flying Blue regards as home. *Goodyear* 564 U.S., 131 S.Ct., at 2853–2854. This is an exacting standard and WVV must show that Flying Blue's contacts with Oregon are constant and pervasive. *Ranza* 793 F.3d at 1069.

Flying Blue's contacts with the state are nowhere near this level.  In fact, Flying Blue's contacts with Oregon are minimal at best.  Flying Blue has no place of business in Oregon, is not incorporated in Oregon, has no contracts with anyone in Oregon, has no employees, sales representatives or agents in Oregon and none of its personnel have even traveled to Oregon in the last five years. Scommegna Dec. at ¶¶4, 17, 19.  Flying Blue's sole contacts with Oregon are the occasional shipment of unrelated products to unaffiliated distributors in Oregon and arranging for a third party to print and affix the labels on the bottles of wine in issue.  *Id.*

As noted above, it is only in an exceptional case where general jurisdiction will be found outside of a corporation's place of incorporation and its principal place of business.  *Ranza* 793 F.3d at 1069.  In *Helicopteros*, the Supreme Court rejected the plaintiff's assertion of personal jurisdiction in Texas despite the fact that the defendant sent its chief executive officer to Houston for a contract-negotiation session, accepted checks drawn on a Houston bank, purchased helicopters, equipment, and training services from Bell Helicopter in Texas for substantial sums; and sent personnel to Bell's facilities in Fort Worth for training. *Helicopteros,* 466 U.S. at 416 (1984).  If these types of contacts with the forum state were insufficient to establish general jurisdiction, then there is simply no basis for a finding that this Court has general jurisdiction over Flying Blue.

### B.  There is no Specific Jurisdiction Over Flying Blue

To find specific jurisdiction over Flying Blue, WVV must establish that: (1) Flying Blue purposefully directed its activities toward the forum or purposefully availed itself of the privileges of conducting activities in the forum; (2) the claim is one which arises out of or relates to the Flying Blue's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice.

With respect to the first prong of the test, the Ninth Circuit requires that Flying Blue (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Axiom Foods* 874 F.3d at 1068. There is no question that Flying Blue has not directed its activities at residents of Oregon. Indeed, the wine in question was shipped to and sold only in the seven states in which Wegmans does business. The label that WVV asserts is a basis for its claims has never been seen by Oregon residents and not a single bottle of the wine bearing the label has ever been sold into Oregon. As such, the claims made against Flying Blue cannot be said to arise out of or relate to its activities in Wisconsin.

With respect to the second prong of the test, Flying Blue had no knowledge that its actions would impact WVV in Oregon. Scommegna Dec. at ¶8. The name Willamette Valley Cellars is a highly descriptive name – just as Plaintiff's asserted mark, Willamette Valley Vineyards is highly descriptive. What could be more descriptive than identifying the geographic location of the vineyard where the grapes for the wine are grown ( the Willamette Valley) and then coupling that with the generic term, "vineyard"? As described by Mr. Scommegna, Flying Blue had no understanding that the selection and use of such a descriptive name would conflict with WVV's use of Willamette Valley Vineyards. Indeed, to the extent any confusion existed, the common law tolerates a certain degree of it on the part of consumers when an originally descriptive term was selected to be used as a mark. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122, 125 S. Ct. 542, 550, 160 L. Ed. 2d 440 (2004). "If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *Id.* quoting *Cosmetically Sealed Industries, Inc. v. Chesebrough–Pond's USA Co.,* 125 F.3d 28, 30 (2d Cir. 1997). Even if Flying Blue could

be said to have had knowledge that its actions would impact WVV in Oregon, that would not be enough to establish specific jurisdiction. *Axiom Foods, Inc.* 874 F.3d at 1069–70.

With respect to the third prong of the test, the factors weigh in Flying Blue's favor. First, Flying Blue has not interjected itself into Oregon commerce given its conduct with respect to this claim. Second, it is unduly burdensome for Flying Blue, a Wisconsin resident to defend the suit in Oregon. Third, the forum state has little to no interest in this dispute given the absence of any alleged infringing activity in Oregon and Flying Blue's place of incorporation and sole place of business in Wisconsin. Fourth, given that virtually none of the witnesses or facts which would bear on this action can be found in Oregon, it is far from the most efficient forum for judicial resolution of the dispute. Finally, Oregon is not the only forum in which this dispute can be heard. Wisconsin is not only an alternative, it is the proper forum for this dispute, to the extent the dispute itself has any merit.

Given the complete lack of contacts with Oregon and the facts and circumstances surrounding this dispute, there is no specific jurisdiction in Oregon.

### C.  Venue is Improper in this District with Respect to Flying Blue

For venue to be proper in Oregon, WVV must show that Flying Blue resides in Oregon *or* that alleged infringing sales occurred in Oregon. Flying Blue's sole place of business is in Wisconsin. It cannot be said to be a resident of Oregon. Moreover, as discussed in detail above, none of the alleged infringing acts occurred in Oregon. No sales or offers for sale of the accused wine have occurred in Oregon. Indeed, no Oregon consumers could have ordered the wine for delivery in Oregon nor even seen the wine in stores. Therefore, venue cannot be proper in this district.

## IV. CONCLUSION

Flying Blue has no presence in Oregon of any kind, and none of the events or omissions allegedly giving rise to Plaintiff's claim against Flying Blue has occurred here. For these and the other reasons set forth above, Flying Blue respectfully requests that the Court dismiss this action for lack of personal jurisdiction and improper venue.

Respectfully submitted,

Dated: May 10, 2021

 s/David P. Cooper
**DAVID P. COOPER, OSB No. 880367**
cooper@khpatent.com
**OWEN W. DUKELOW, OSB No. 965318**
owen@khpatent.com
**KOLISCH HARTWELL, P.C.**
520 SW Yamhill St., Suite 300
Portland Oregon 97204
Telephone: (503) 224-6655

**ADAM L. BROOKMAN**
abrookman@boylefred.com
**BOYLE FREDRICKSON, S.C.**
840 N. Plankinton Ave.
Milwaukee, WI 53203
Telephone: (414) 225-9755

*Attorneys for Defendant Flying Blue Imports, LLC*