IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **WILLAMETTE VALLEY VINEYARDS, INC.**<br><br>Plaintiff,<br><br>**FLYING BLUE IMPORTS, LLC DBA FLYING BLUE AKA WILLAMETTE VALLEY CELLARS,**<br><br>Defendant. | Case No. 3:21 cv-00514 JR<br><br>DECLARATION OF ROGER SCOMMEGNA IN SUPPORT OF FLYING BLUE IMPORT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPER VENUE |

I, Roger Scommegna, declare and state as follows:

I make the following statements based on my own personal knowledge.

1. I am the CEO of Flying Blue Imports, LLC, the defendant in this action.

2. Flying Blue is a Wisconsin limited liability company with its sole place of business in Wisconsin.

3. Willamette Valley Cellars was not and is not an entity or name under which Flying Blue has or is known. Rather, Willamette Valley Cellars was merely a brand name – to the extent it has any distinctiveness at all - for a single, limited product (1740 cases of wine) sold to Wegmans Food Markets.

4. Flying Blue owns no real estate, maintains no bank accounts, has no contracts, has no telephone listings, has no retail outlets, does not operate any distribution centers, order centers, or manufacturing plants and does not maintain any employees, agents or sales representatives with or within Oregon.

5. It would be extremely inconvenient, inordinately time consuming, and needlessly expensive, if Flying Blue were required to litigate this action in Oregon.

6. I am long-time wine entrepreneur and one of the original owners of the Three Thieves label. I am the current owner of Signal Ridge Vineyards. Stephanie Riven was the winemaker for Signal Ridge.  When Ms. Riven decided to move to Bordeaux, France in 2016, she and I wanted to continue in business together and founded Flying Blue Imports to import hidden gems to be sold under private or exclusive labels through distributors to grocery stores (e.g., Albertsons and Winn Dixie) and big box retailers (e.g., Costco and Target).

7. Over the last five years, Flying Blue's business has expanded to include the purchase, bottling, and labeling of wine in the United States that various sellers could not use.  This has resulted in the annual creation of upwards of 100 different labels under which the wine is sold.  Some of the labels, such as "French Blue" are very successful and become year over year mainstays of Flying Blue. More recently, Flying Blue has created and sold wine "advent calendars" that have become its largest selling product line.  Each "calendar" has multiple bottles of wine each with its own label.

8. In 2020, Wegmans Food Market, a relatively small grocery chain on the east coast with locations in seven states (Maryland, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania, and Virginia) expressed an interest in an exclusive wine label to sell across its stores.  To address this interest, Flying Blue sourced 1740 cases of pinot noir "shiners" (filled bottles of wine without labels) from a winery in the Willamette Valley.  I named this wine "Willamette Valley Cellars Pinot Noir Reserve" to describe the location from which the wine came and to echo the notion of wine cellars in the same manner as many others do for wines from other regions (e.g., "Napa Cellars" (https://www.napacellars.com/) and "Bennet Valley

Cellars" (https://www.bennettvalleycellars.com/)).   Flying Blue designed the label for the wine which is a distinctive dark blue with white lettering and a large white puffy cloud as shown below.



This label bears no resemblance to the labels used by WVV, an example of which is set forth below:



Neither I, nor anyone else associated with Flying Blue had any knowledge or expectation that Willamette Valley Vineyards ("WVV") would object to or be harmed by our use of this highly descriptive name.

9. After the wine's introduction at Wegmans, in July of 2020, WVV contacted Flying Blue and demanded that Flying Blue voluntarily abandon its trademark application for the "Willamette Valley Cellars" mark; voluntarily surrender the certificate of label approval ("COLA") for the "Willamette Valley Cellars" label; permanently disabled the <willamettevalleycellars.com> domain so that it does not forward or resolve to any website (which was not even active at that time); remove the "Willamette Valley Cellars" page from the Flying Blue Imports website; delete all references to "Willamette Valley Cellars" from your Facebook, Twitter, Instagram and other social media pages; agree not to use the "Willamette Valley Cellars" name going forward; and provide a date certain for the cessation of sales of the wine.

10. In response to WVV's demands, I indicated to WVV that the wine was a limited run and would be closed out, estimating that Wegmans (an independent third party over whom Flying Blue has no control) would sell out of the wine in issue by approximately March 1, 2021. We agreed not to use the name again and expressly abandoned our trademark application.

11. Prior to the filing of the lawsuit, Flying Blue deleted the references to "Willamette Valley Cellars" on its social media pages and agreed to take down its web page devoted to the wine and to withdraw the COLA within 30 days of Wegmans' sell out of the wine.[1]

12. Shortly after March 1, 2021, in response to renewed demands of WVV for Flying Blue to force Wegmans to cease all sales, I reiterated to WVV that no further product had been or would be labeled or shipped. Despite my assurances of no further use of the name and other

---

[1] A COLA must remain on file with U.S. Department of the Treasury's Alcohol and Tobacco Tax and Trade Bureau while a wine is being sold in the United States.

elements of compliance with WVV's demands, WVV insisted that Flying Blue cause Wegmans to immediately cease all sales of the wine or face an immediate lawsuit.

13. I was frustrated by WVV's demands to do something beyond our control (stop Wegmans, an independent third party from selling wine it had purchased in an arm's length commercial transaction) and in the face of our prior efforts to comply with WVV's wishes, I sarcastically told WVV to sue Flying Blue if our efforts were not enough.

14. Despite the minuscule amount of product originally in issue and the even tinier amount remaining in Wegmans' inventory (less than 200 cases), and in the face of Flying Blue's assurances and steps to comply with WVV's demands, WVV filed the instant lawsuit.

15. Wegmans has stores in only seven states, all on the east coast and does not ship any products outside its trading area. As a review of Wegmans' web site reveals, products in store inventory are available only for in store purchase, curbside pickup following an online order and delivery within a narrow area surrounding each store.  See Exhibit A hereto, which is a true and correct copy print outs of my attempts to order Willamette Valley Cellars Pinot Noir Reserve for pickup, delivery and in-store purchase in the 97204 area code.  As such, the product in question, Willamette Valley Cellars Pinot Noir Reserve, has been sold only in a limited geographic area far from Oregon.  No one in Oregon can purchase the product, nor has any potential customer in Oregon been exposed to it.  While Flying Blue does ship some of its product to distributors in Oregon for resale to unaffiliated retail entities, Flying Blue has not made a single sale into Oregon of the product that is accused of infringing WVV's asserted trademark rights.

16. The product in question while purchased from an Oregon vineyard, was already bottled when it was acquired. The bottled wine was purchased via an ordinary commercial transaction, via telephone and email from outside the state of Oregon, without a contract being signed.

17. The label was designed in Wisconsin at Flying Blue's only location, in Brookfield, Wisconsin. While it was printed and affixed to bottles in Oregon, no customers or potential customers ever saw it in Oregon. Instead, after the labels were affixed, the bottles were packed into cases and shipped out of Oregon by Wegmans' distributor, Milton's Distributing Co. ("Milton's"). They remained with Milton's until distributed to Wegmans stores for sale. Only then were the labels made visible to the public through Wegmans' web site, Flying Blue's web page devoted to the product and in Wegmans' stores.

18. At all times, however, the consuming public was limited to persons in the seven states where Wegmans stores are located.

19. Flying Blue does ship product to unaffiliated distributors in Oregon in connection with other products. It also has, on less than 10 occasions over the last five years, purchased excess inventory of wine from several Oregon vineyards. As with the transaction involving the current wine in dispute, the transactions were conducted remotely, from outside Oregon, without a contract and no one representing Flying Blue has traveled to Oregon in the last five years.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 10, 2021.

_____
Roger Scommegna

CEO
Flying Blue Imports, LLC